**NOT FOR PUBLICATION**                                  [Doc. Entry No. 13]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

SHIRLEY SAVAGE,

       Plaintiff,            Civil Action No. 05-2047 (RMB)

       v.                      **OPINION**

STATE OF NEW JERSEY

       Defendant.

---

Appearances:

    William A. Riback
    527 Cooper Street
    Second Floor
    Camden, NJ 08102
        Attorney for Plaintiff, Shirley Savage

    Joanne Stipick
    Office of the N.J. Attorney General
    RJ Hughes Justice Complex
    P.O. Box 112
    Trenton, NJ 08625
        Attorney for Defendant, State of New Jersey

**BUMB**, United States District Judge:

    This matter comes before the Court upon a motion for summary judgment by Defendant, State of New Jersey. Plaintiff, Shirley Savage, filed a Complaint alleging claims under the Family Medical Leave Act and New Jersey's Law Against Discrimination

1

against Defendant for its termination of her employment. For the reasons discussed below, Defendant will be granted summary judgment on Plaintiff's federal claim. The state law claim will be dismissed without prejudice.

I. Standard

Summary judgment shall be granted if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Hersh v. Allen Products Co., 789 F.2d 230, 232 (3d Cir. 1986). "In making this determination, a court must make all reasonable inferences in favor of the non-movant." Oscar Mayer Corp. v. Mincing Trading Corp., 744 F. Supp. 79, 81 (D.N.J. 1990) (citing Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983) cert. dismissed, 465 U.S. 1091 (1984)). "At the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

II. Statement of Facts

Plaintiff, Shirley Savage, began her employment with the New Jersey Judiciary in July 2000. Her responsibilities included data entry, reception work, and interaction with jurors and other

members of the public.  Defendant contends that Plaintiff spent 80% of her time working with members of the public.

In late December 2002, Plaintiff reported to her supervisor that her co-workers were monitoring her moves by means of a tracking device.  Plaintiff described this as a device placed in her food which allowed her co-workers to see what she was doing at all times.  Neither Plaintiff nor Defendant disputes that Plaintiff was capable of performing her job responsibilities. Nonetheless, Plaintiff's supervisors were alarmed and requested Plaintiff speak with a counselor from the Employment Assistance Program ("EAP").  The counselor recommended Plaintiff speak with a psychiatrist and referred her to a Dr. Stobal at Cooper Medical Center.

To allow Plaintiff time to meet with both the counselor and Dr. Stobal, commencing on December 23, 2002, the Judiciary paid Plaintiff, but did not require her to report for work.  Defendant paid Ms. Savage while not reporting to work from December 23, 2002 through February 28, 2003.  Plaintiff saw Dr. Stobal on January 20, 2003.  Dr. Stobal reported that Plaintiff had delusions and should be treated with antipsychotics and therapy. He also recommended that Plaintiff be out of work until her delusions abate.  However, he declined to declare her unfit for duty.

On February 20, 2003, a meeting was held to discuss Plaintiff's status.  Present at the meeting were Plaintiff, her

union representatives Lindsey Chambers and Joan Cahill, James Grazioli, Human Resource Division Manager, and Michelle Reganato, an Administrative Supervisor with the Human Resources department. During that meeting, Defendant learned that Plaintiff refused any further treatment from Dr. Stobal and was not being treated by any other doctors. Accordingly, Defendant told Plaintiff that she would have to return to work. Defendant advised Plaintiff that if she sought further treatment and her doctors felt she needed to be out of work, she would not have to return to work but would have to use her own personal time or take an unpaid leave while she remained out.

At that point in the meeting, Plaintiff contacted Dr. Stobal's office to obtain another appointment with him. Plaintiff's union representatives asked for assurances that Plaintiff would have a job to return to if it were necessary for her to remain out of work to seek medical treatment. Defendant told Plaintiff that if she needed to stay out of work because of a serious health condition, she would be entitled to leave pursuant to the Family Medical Leave Act ("FMLA").

Plaintiff's union representatives requested written confirmation of Plaintiff's right to leave pursuant to FMLA. Defendant agreed and sent a letter to setting forth general information regarding leave under the FMLA. The letter stated that Plaintiff was approved for FMLA leave from March 8, 2003 through May 30, 2003, which reflects twelve weeks of time.

Plaintiff testified that she never saw the letter until she requested a copy of her personnel file in January 2005.

Plaintiff saw Dr. Stobal in late February 2003. Plaintiff reported to Defendant that Dr. Stobal had suggested she get a second opinion and that she had a second appointment scheduled the next week. Plaintiff was charged sick and/or vacation time for the week. Plaintiff subsequently provided Defendant with a note from a Dr. Peter Calafiura of Genesis Counseling. The note stated, "To Whom It May Concern: Shirley was evaluated by me in the office today. I believe she is able to return to work at this time. She does not need medication or follow-up at this time. Upon receipt of this note, Defendant contacted Dr. Calafiura and learned that Plaintiff had not reported her claims that her coworkers were monitoring her moves with a tracking device.

After speaking with Dr. Calafiura, Defendant found a position for Plaintiff which would not require her to work with the public in the event Plaintiff continued to exhibit the same conduct which had caused the Judiciary to send her for counseling and treatment initially. Plaintiff reported to work and continued to exhibit the same conduct which had initially caused Defendant to refer her for counseling. She reported that her co-workers were tracking and monitoring her movements. As a result, Defendant scheduled another meeting with Plaintiff, her union representative, Joan Cahill, and Deborah Robertson,

Defendant's Operations Manager. At that time, Defendant requested Plaintiff be examined by a third doctor. Defendant claims the request was based on the conflicting reports of Dr. Stobal and Dr. Calafiura, along with Plaintiff's behavior. Defendant advised Plaintiff that she would not have to report to work while she was waiting for the examination to take place and that Defendant would pay her during that time.

    Defendant scheduled an examination for Plaintiff with Dr. Joel Glass. Plaintiff did not attend her scheduled examination nor did she report to work. Defendant learned of Plaintiff's failure to attend the examination when it contacted Dr. Glass to obtain the results. Defendant contacted Plaintiff and she advised him that she did not believe it was necessary for her to attend the examination. Defendant informed Plaintiff that she would not be paid for the dates she had not attended the examination and had not reported to work or contacted her employer.

    Defendant again made arrangements for Plaintiff to work in a position that would not require her to interact with the public. Defendant informed Plaintiff that she had to report back to work. Plaintiff asked if she could use personal time for the rest of the week. Defendant agreed. Plaintiff was directed to report to work on April 14. On Monday April 14, 2003, Ms. Savage did not report to work.

    Defendant contacted her to inquire why she was not present

and she asked to use a vacation day for that day. Defendant agreed she could use vacation time for April 14, 2003. Plaintiff did not report for work or call in on April 15-18. She also did not call or report in during the week of April 21. On Wednesday April 23, 2003, Defendant directed correspondence to Plaintiff advising that she had been out of work for more than 5 days without her supervisor's approval and any further absences will be recorded as a resignation not in good standing.

This letter was sent to Plaintiff by both regular and certified mail. Plaintiff acknowledged signing for this letter but denied that she actually read it. When Defendant received no response to their correspondence it issued a Preliminary Notice of Discipline Action. This notice of discipline was also sent by regular and certified mail and Plaintiff's union representative was copied and served with the notice as well.

Plaintiff contacted Defendant and advised that she wanted to appeal her termination. A hearing was scheduled and all parties were notified. On the day of the hearing Plaintiff did not appear. Her union representative contacted her and also spoke with Plaintiff's sister. Plaintiff still would not appear at the hearing. As a result of Plaintiff's failure to appear at her hearing, a Final Notice of Disciplinary Action was issued upholding her termination based on neglect of duty and a resignation not in good standing.

Plaintiff filed this action asserting claims against

Defendant under the Family and Medical Leave Act and New Jersey's Law Against Discrimination. Defendant now moves for summary judgment on both of Plaintiff's claims.

III. Analysis

Defendant argues that the Eleventh Amendment provides it immunity from suit on Plaintiff's claims. In the alternative, Defendant argues that it is entitled to summary judgment on Plaintiff's federal claims. Plaintiff contends that Defendant has waived its Eleventh Amendment immunity from suit and that Plaintiff has sufficient evidence to overcome summary judgment. For the reasons discussed below, summary judgment will be granted.

The Eleventh Amendment of the U.S. Constitution denies federal courts jurisdiction over suits by private parties against nonconsenting States. Kimel v. Florid Bd. of Regents, 528 U.S. 62, 73 (2000). This jurisdictional bar, referred to as an immunity from suit, can be abrogated by Congress when it both, acts pursuant to a valid exercise of its power under §5 of the Fourteenth Amendment, and makes its intention to abrogate unequivocally clear in the statute. Board of Trustees of Univ. of Alabama v. Garrett, 531 U.S. 356, 363 (2001).

The Family and Medical Leave Act, 29 U.S.C. §§ 2601 et seq., requires state employers, among others, to provide "12 workweeks of leave" for the following reasons: (A) because of the birth of

a child of the employee and in order to care for such child; (B) because of the placement of a child with the employee for adoption or foster care; (C) in order to care for the spouse, son, daughter, or parent of the employee, if such relative has a serious health condition; and (D) because of a serious health care condition that makes the employee unable to perform the function of the position of such employee. 29 U.S.C. §2612(a)(1). The Act grants employees a private right of action against their employer for violations of the Act. 29 U.S.C. § 2617(a)(2)(A). The focus of the instant Complaint is section D, termed the self-care provision, which provides leave to employees because of a serious health care condition. 29 U.S.C. § 2612(a)(1)(D).

The Court of Appeals for the Third Circuit previously held that Congress had not abrogated the States' Eleventh Amendment immunity with respect to violations of § 2612(a)(1)(A) through (D). Chittister v. Dep't of Comm. and Economic Development, 226 F.3d 223, 229 (3d Cir. 2000) rev'd, Nevada Dep't of Human Resources v. Hibbs, 538 U.S. 721, 740 (2003). The Chittister court did not specify which subsection of section 2612 was at issue. The court concluded that Congress was unequivocal in its intent to abrogate state Eleventh Amendment immunity when it enacted the FMLA. Id. at 228. Congress claimed the power to abrogate that immunity under its power to enforce the Fourteenth Amendment's prohibition on gender-based employment

9

discrimination. Id. The Chittister court held, however, that section 2612 of the FMLA was not congruent and proportional to the harms it sought to remedy; there was insufficient evidence that States had historically engaged in gender-based employment discrimination. Id. at 228-29.

The Supreme Court took up the question three years later and held that the family-care provisions of section 2612, subsections A through C, could be enforced against the states in federal court. Nevada Dep't of Human Resources v. Hibbs, 538 U.S. 721, 735 (2003). The Court found that Congress had enacted the FMLA on a sufficient record of the States' "unconstitutional participation in, and fostering of, gender-based discrimination in the administration of leave benefits . . . ." Id. While some of the evidence recounted suggests that both self-care and family-care leave provisions were applied in discriminatory ways, see, e.g., id. at 731 n.5 (identifying "catchall leave-without-pay provisions"), and id. at 732 (identifying "lack of uniform parental and medical leave policies"), the Court limited its holding to the family-care provision of subsection C, id. at 740. The Hibbs opinion, thus, reversed in part the Third Circuit's holding in Chittister.

Since Hibbs, the Third Circuit has not spoken on the issue in a precedential opinion. Other Courts of Appeals have. The Tenth, Seventh, and Sixth Circuits have concluded that Hibbs does not preclude a finding that the self-care provision of the FMLA

is unenforceable against the States in federal court. <u>Toeller v. Wisconsin Dep't of Corrections</u>, 461 F.3d 871, 879-80 (7th Cir. 2006); <u>Touvell v. Ohio Dep't of Mental Retardation and Developmental Disabilities</u>, 422 F.3d 392, 405 (6th Cir. 2005); <u>Brockman v. Wyoming Dep't of Family Services</u>, 342 F.3d 1159, 1165 (10th Cir. 2003). Most relevant, Plaintiff does not argue that <u>Hibbs</u> alters the <u>Chittister</u> holding with respect to the self-care provision. Rather, Plaintiff contends that Defendant waived its Eleventh Amendment immunity from FMLA claims when it "invoked the FMLA." (Pl.'s Br. in Opp. at 2).

Plaintiff's argument on this point is merely a string of seemingly unrelated statements. Defendant did not "invoke" the FMLA. It is not contested that Plaintiff's union representatives requested that Plaintiff be advised of her FMLA rights. (Grazioli Cert. at ¶ 22). Moreover, Plaintiff testified that she never saw the documents the State sent to her regarding her FMLA rights. (Savage Dep. at 229-31). While Plaintiff contends in her opposition that she was granted FMLA leave, (<u>see</u> Pl.'s Opp. at 2-3), she testified that she never requested FMLA leave, (Savage Dep. at 231). There is simply no evidence to support Plaintiff's contention that Defendant "invoked" the FMLA (and even so, it is not clear why this fact is instructive), or that Plaintiff either requested or was granted FMLA leave.

Notwithstanding the absence of evidence in support of Plaintiff's argument, which does not have significant relevance,

a state cannot waive its Eleventh Amendment immunity from suit in federal court. In <u>Chittister</u>, Pennsylvania defended the plaintiff's FMLA claim through to trial. 226 F.3d at 227. As a jurisdictional bar, Eleventh Amendment immunity may be raised at any time. <u>Id.</u>, <u>see also</u>, <u>Wheeling & Lake Erie Ry. v. PUC</u>, 141 F.3d 88, 91 (3d Cir. 1998). Accordingly, Plaintiff's argument that Defendant has waived its immunity fails.

Having proceeded this far, there is no need to address the constitutional question of whether Congress abrogated the States' immunity with the self-care provision. The explicit and narrow holding in <u>Hibbs</u>, has not overturned the holding in <u>Chittister</u> that the self-care provision cannot be enforced against the States in federal court. <u>Chittister</u> remains the law of this circuit and Plaintiff does not argue to the contrary. Moreover, as will be discussed, even if the Eleventh Amendment did not preclude this Court's jurisdiction over Plaintiff's claim, there exists alternative grounds for granting summary judgment. Accordingly, this Court will not reach the constitutional question unnecessarily. <u>United States v. Manzella</u>, __ F.3d __, __, 2007 U.S. App. LEXIS 2303, *22 n.5 (3d Cir. Feb. 2, 2007) (quoting <u>Hagans v. Lavine</u>, 415 U.S. 528, 547 (1974) ("[A] federal court should not decide federal constitutional questions where a dispositive nonconstitutional ground is available.")).

Defendant's other contention is that Plaintiff's claim fails because she does not have a serious health condition. An

employee is entitled to leave if she suffers from a "serious health condition" that renders her unable to "perform the functions of the employee's position." 29 U.S.C. § 2612(a)(1)(D). A serious health condition is defined as "an illness, injury, impairment, or physical or mental condition that involves either, inpatient care in a hospital, hospice, or residential medical care facility, or continuing treatment by a health care provider." 29 U.S.C. § 2612(11). This issue is not addressed in Plaintiff's opposition to Defendant's motion.

A review of the evidence indicates that Plaintiff testified that she has never been told she had a serious health condition. (Savage Dep. at 165). Plaintiff's brief in opposition states that both doctors who examined her "found that Plaintiff was not unfit for duty." (Pl.'s Br. in Opp. at 5). Plaintiff's claim fails because, by her own admission, concurred in by two physicians, she does not have a serious health condition. Accordingly, Defendant should be granted summary judgment on Plaintiff's FMLA claim.

Plaintiff's remaining claim is one based on New Jersey's Law Against Discrimination. N.J. Stat. Ann. § 10:5-1 et seq. Defendant argues that this claim, too, cannot be litigated in this Court based on the State's Eleventh Amendment immunity. Having disposed of the only federal cause of action, this Court will decline to exercise supplemental jurisdiction over the state law claim. 28 U.S.C. § 1367(c)(3). Accordingly, Count Two

will be dismissed without prejudice.

IV. Conclusion

For the reasons discussed above, Plaintiff's FMLA claim will be dismissed with prejudice. Plaintiff's state law claim will be dismissed without prejudice.

Date: 2/23/07

s/ Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge